UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RANA JAHANI, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>MARCO RUBIO,<br><br>    Defendant. | No. 25-cv-989 (TSC) |

## MEMORANDUM OPINION

Plaintiffs are Iranian nationals who applied for visas to study or research in the United States, as well as their derivative beneficiaries. After Plaintiffs' visa applications were refused under 8 U.S.C. § 1201(g) and placed into administrative processing, they sued the Secretary of State. Plaintiffs claim that the State Department is unlawfully withholding and unreasonably delaying final adjudication of their visa applications. *See* Compl. ¶¶ 2–3, 35–36, ECF No. 1. Defendant now moves for judgment on the pleadings, arguing that the State Department has no "duty to take further action on . . . refused visa applications." Defs.' Mot. for J. on the Pleadings at 1, ECF No. 28. Because the D.C. Circuit held precisely that in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), the court will GRANT Defendant's Motion for Judgment on the Pleadings.

Also before the court is Plaintiffs' Motion for Leave to Amend the Complaint. The proposed amended complaint repeats without material change Plaintiffs' original claims of unlawful withholding and unreasonable. But it adds new claims challenging (1) Presidential Proclamation No. 10949, which suspends the entry of most Iranian nationals into the United States; and (2) a State Department policy that purports to implement the Proclamation by

directing consular officers to refuse visas to most Iranian nationals.  *See* Pls.' Mot. for Leave to Amend Compl., ECF No. 38.  For the reasons below, the court will GRANT in part and DENY in part Plaintiffs' Motion for Leave to Amend the Complaint.  A separate order will follow.

## I. BACKGROUND

### A. Legal Background

F-1 visas are available to certain noncitizens qualified to study in the United States, and J-1 visas are available to certain noncitizens who are "coming temporarily to the United States" to, among other things, teach or research.  8 U.S.C. § 1101(a)(15)(F), (J).  The spouse or minor child of any such person may receive a derivative visa—an F-2 or J-2 visa—enabling them to join the primary visa holder in the United States.  *Id.*  The burden is on the applicant to demonstrate eligibility for the visa, *id.* § 1361, and a consular officer may only issue a visa if an applicant "has made a proper application therefor."  *Id.* § 1201(a)(1)(B).

"Visa applicants 'make' or 'execute' their application by bringing the required paperwork to an in-person interview with a consular officer."  *Karimova*, 2024 WL 3517852, at *1 (quoting 9 F.A.M. § 504.1-3(a), (g).  Once "a visa application has been properly completed and executed," "the consular officer must issue" or "refuse the visa."  22 C.F.R. § 41.121(a); *see also* 9 F.A.M. § 504.1-3(g) ("Once an application has been executed, [the consular officer] must either issue the visa or refuse it.").[1]  If the applicant fails to establish visa eligibility, the consular officer "shall" refuse the application under section 221(g) of the Immigration and Nationality Act ("INA").  *See* 8 U.S.C. § 1201(g); *see also id.* § 1361 (placing burden on applicant to establish eligibility).  A refusal is a "formal," "official decision" that fulfills the consular officer's duty to act on a visa

---

[1] If the applicant's home country is under a visa sanction, the consular officer must instead "discontinue granting the visa."  22 C.F.R. § 41.121(a).  This provision is inapplicable here.

application. *Karimova*, 2024 WL 3517852, at *2 (cleaned up). That said, a consular officer "may choose to place an officially refused application in administrative processing," which allows the officer to "re-open and re-adjudicate" the previously refused application if additional information comes to light, potentially sparing the applicant the need to file a new application. *Karimova*, 2024 WL 3517852, at *2 (citing 9 FAM § 306.2-2(A)(a), (A)(a)(2)). "Unless and until" an officer re-opens an application, it "remains officially refused." *Id.*

In June 2025, President Trump issued Presidential Proclamation 10949. *See* 90 Fed. Reg. 24497 (June 4, 2025). Invoking his authority under section 212(f) of the INA—which provides that the President "may . . . suspend the entry of all [noncitizens] or any class of [noncitizens]" "[w]henever [he] finds that the entry of any [noncitizens] or any class of [noncitizens] . . . would be detrimental to the interests of the United States," 8 U.S.C. § 1182(f)—President Trump suspended the entry of certain noncitizens from 19 countries, including Iran. *See* 90 Fed. Reg. at 24498–99. Shortly after President Trump issued the Proclamation, the State Department "sent implementing guidance to all diplomatic and consular posts worldwide," informing those posts that they should refuse visas to persons otherwise eligible if they are subject to the Proclamation. *Thein v. Trump*, No. 25-cv-2369 (SLS), 2025 WL 2418402, at *3 (D.D.C. Aug. 21, 2025). Plaintiffs refer to this as the "No Visa Policy."

B. **Procedural History**

Plaintiffs originally filed this case in the U.S. District Court for the Western District of Missouri in November 2024. *See* Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss, ECF No. 23 ("MTD Order"). All Plaintiffs—except one—had their applications for F or J visas refused and placed into administrative processing following an interview with a consular officer. Compl. ¶¶ 2, 76, 84, 93, 100, 108, 117, 124, 131, 140, 149, 158, 165, 173, 181, 241, 243.

The one other Plaintiff is an F-1 visa holder currently living in the United States who is suing because his spouse's F-2 visa application was refused. *Id.* ¶¶ 155–58.

Plaintiffs' original complaint contained three claims under the Administrative Procedure Act and Mandamus Act alleging that the State Department was unlawfully withholding and unreasonably delaying final adjudication of Plaintiffs' visa applications. Compl. ¶¶ 213–39, 246–57. And it contained a fourth claim alleging that the State Department's use of § 1201(g) refusals and administrative processing to "throttle issuance of visas" violated the APA. Compl. ¶¶ 240–45. In March 2025, the Western District of Missouri dismissed Plaintiff's "illegal throttling" claim and transferred the three remaining claims for unlawful withholding and unreasonable delay to this District on venue grounds. MTD Order at 3–5, 7–9.[2] Defendant then answered the Complaint and moved for judgment on the pleadings. *See* Answer, ECF No. 27; Def.'s Mot. for J. on the Pleadings, ECF No. 28 ("MJP"). Defendant also moved for relief from Local Civil Rule 7(n), *see* Def.'s Mot. for Relief, ECF No. 31, which requires agencies, "[i]n cases involving the judicial review of administrative agency actions," to produce certain parts of the administrative record. D.D.C. Loc. Civ. R. 7(n).

In July 2025, Plaintiffs moved to amend their complaint in response to Presidential Proclamation 10949. *See* Pls.' Mot. for Leave to Amend Complaint, ECF No. 38 ("Pls.' Mot."). Plaintiffs assert that "the proposed amendments to the Complaint do not alter [their] fundamental claims" of unlawful withholding and unreasonable delay. *See* Pls.' Mot. at 6. Instead, they seek to add three new claims challenging the Proclamation and the State Department's No Visa Policy.

---

[2] Plaintiffs also initially sued the Director of the National Vetting Center. The Western District of Missouri dismissed all claims against the Director, leaving the Secretary of State as the only Defendant. *See* MTD Order at 13.

*See* Pls.' Proposed Amended Compl. (Redlined) at 60–64, ECF No. 38-3 ("Proposed Amended Compl.").

First, Plaintiffs claim that section 212(f) of the INA is an unconstitutional delegation of legislative power, and, even if it were constitutional, the Proclamation exceeds the President's authority under that provision. *See* Proposed Am. Compl. at 60–61. Second, Plaintiffs contend that the State Department's No Visa Policy is contrary to law because the President's suspension of the *entry* of certain noncitizens into the United States does not mean that those noncitizens can be refused a visa. *See id.* at 61–63. Third, Plaintiffs claim that the No Visa Policy is arbitrary and capricious. *See id.* at 63–64. Defendant opposes Plaintiffs' motion to amend their complaint. *See* Defs.' Opp'n, ECF No. 40.

## II.     MOTION FOR JUDGMENT ON THE PLEADINGS

Federal Rule of Civil Procedure 12(c) permits a party to "move for judgment on the pleadings" "[a]fter the pleadings are closed—but early enough not to delay trial." "The standard of review for [a] Rule 12(c)" motion "essentially mirrors the standard for motions to dismiss under Rule 12(b)." *Tapp v. WMATA*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016). The court must "accept as true the allegations in the opponent's pleadings," and determine whether the movant has shown "that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Marine Eng'rs Beneficial Ass'n v. Liberty Maritime Corp.*, 933 F.3d 751, 760–61 (D.C. Cir. 2019) (cleaned up).

Defendant has shown that he is entitled to judgment as a matter of law on Plaintiffs' claims of unlawful withholding and unreasonable delay under the APA and the Mandamus Act. To prevail under either statute, Plaintiffs must make the same "threshold" showing that the State Department has "'failed to take a discrete agency action that it is required to take.'" *Karimova*,

2024 WL 3517852, at *1 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).³ Because Plaintiffs fail to point to any duty requiring the State Department to take further action on already-refused visa applications, Plaintiffs cannot prevail on these claims as a matter of law.⁴

Although a consular officer must "issue" or "refuse" a visa once an application is executed, 22 C.F.R. § 41.121(a), Plaintiffs have "already received" the "official refusal[s]" to which they are entitled. *Karimova*, 2024 WL 3517852, at *4. Indeed, Plaintiffs do not dispute that their visa applications have been refused under section 221(g) of the INA. Instead, they assert that "an interim [§ 1201(g)] refusal" is not "a final determination of visa eligibility" and is therefore "not a full adjudication." Pls.' Opp'n at 20. But a unanimous panel of the D.C. Circuit squarely rejected that argument in *Karimova*. There, the Court explained that even if a consular officer places an executed application into administrative processing after refusing it, the officer has still issued a "formal" and "official refusal" that discharges any duty to act under 22 C.F.R. § 41.121(a) and section 555(b) of the APA. *Karimova*, 2024 WL 3517852, at *2, 4. This likewise fulfills any obligation under 22 C.F.R. § 41.106 to "properly and promptly" process a visa application, to the extent such an obligation exists. *See Hemmat v. Blinken*, 2024 WL 4210658, at *4 (D.D.C. Sep. 17, 2024). Because Plaintiffs identify no clear requirement that the State Department must act further once issuing a § 1201(g) refusal, they cannot state a claim under either the APA or the

---

³ *See also In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (To obtain the "extraordinary remedy" of mandamus, Plaintiffs "must first establish that the agency has violated a crystal-clear legal duty." (citation modified)); *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009) (To prevail on a claim of agency inaction under the APA, Plaintiffs must "identify a legally required, discrete act that [the agency] has failed to perform.").

⁴ Because the court dismisses Plaintiffs' claims on this ground, it need not address Defendant's alternative argument that the doctrine of consular nonreviewability bars Plaintiffs' claims. *See Almaqrami v. Pompeo*, 933 F.3d 774, 784 n.3 (D.C. Cir. 2019) ("Courts may assume without deciding that a plaintiff's statutory claims are reviewable and proceed to the merits notwithstanding consular nonreviewability." (citation modified)).

Mandamus Act. *See Sedaghatdoust v. Blinken*, 735 F. Supp. 3d 1, 7 (D.D.C. 2024) ("[T]he *only* duty that the statute or regulations impose on consular officers is a duty to grant or refuse a visa. And that duty has been performed; [plaintiff's] application has been refused. The statute does *not* create an additional duty to engage in post-refusal reconsideration[.]").

Plaintiffs attack *Karimova* as "nonprecedential and nonbinding." Pls.' Opp'n at 10. Although "courts in this district are split on whether unpublished circuit decisions like *Karimova* are binding," *see Seifan v. Sweeney*, No. 25-cv-261, 2025 WL 2171093, at *3 (D.D.C. July 31, 2025) (collecting cases), this court has already held that it "must follow" *Karimova*. *See Deylami v. Kvien*, No. 23-cv-1393, 2025 WL 219064, at *5 (D.D.C. Jan. 16, 2025). While unpublished decisions of the D.C. Circuit are not binding on future panels of the Court of Appeals, those decisions are "precedential" if entered on or after January 1, 2002. *Davis v. U.S. Sent'g Comm'n*, 716 F.3d 660, 666 n.2 (D.C. Cir. 2013) ("Because it was unpublished, while that decision is precedential, it is not binding on *this panel*." (emphasis added)); *see also Khaksari v. Chairman, Broad. Bd. of Governors*, 451 F. App'x 1, at *4 (D.C. Cir. Oct. 28, 2011) (explaining that unpublished opinions after January 1, 2002, have "the force of precedent"); *accord In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) ("Although our circuit does not have a local rule directly on point, we agree that unpublished dispositions should not *strictly* bind *panels of the court*." (emphasis added)). Given "our hierarchical system of absolute vertical stare decisis," *Klayman v. Obama*, 805 F.3d 1148, 1149 (D.C. Cir. 2015) (Kavanaugh, J., concurring in the denial of rehearing en banc), this lower court will not depart from the directly on-point, unanimous decision of three appellate judges.

In any event, "regardless of whether *Karimova* is actually binding, it is still a case decided by the Circuit that contains reasoning the court finds persuasive." *Pour v. Rubio*, No. 25-cv-573,

2025 WL 2374559, at *5 (D.D.C. Aug. 14, 2025) (cleaned up); *see also Doroodchi v. Rubio*, No. 24-cv-3170, 2025 WL 1865114, at *4 (D.D.C. July 7, 2025) ("Published or not, [*Karimova*] represents the considered and unanimous judgment of a D.C. Circuit panel."). As the D.C. Circuit persuasively explained, the fact that the State Department might "re-open and re-adjudicate" a refused application based on new information does not change the fact that the Department has already acted on and refused the application, thus satisfying the only duties established by regulation. *See Karimova*, 2024 WL 3517852, at *2, *4–5. And critically, "nothing in federal law" prevents a consular officer from "hold[ing] onto [a refused] application in case circumstances later change in the applicant's favor, thereby saving the applicant the time and cost of filing a whole new visa application." *Id.* at *4. Indeed, by "keeping the door open," "administrative processing can only benefit, never hurt, the applicant's entry prospects." *Id.* at *2. To hold otherwise would only incentivize the State Department to deny visa applicants the opportunity of administrative processing. Accordingly, the court will GRANT Defendant's Motion for Judgment on the Pleadings.

### III. MOTION FOR RELIEF

The court will also GRANT Defendant's Motion for Relief from Local Civil Rule 7(n). That rule provides that "[i]n cases involving the judicial review of administrative agency actions," "the agency must file a certified list of the contents of the administrative record" as well as "copies of those portions of the administrative record that are . . . relied upon" in any dispositive motion by the agency. D.D.C. Loc. Civ. R. 7(n). "This rule is intended to assist the Court . . . by providing . . . copies of relevant portions of the record relied upon in any dispositive motion." Cmt. to D.D.C. Loc. Civ. R. 7(n) (emphasis added). Thus, when the record is not relevant to the pending motion and "not necessary for the court's decision," courts in this district waive the agency's compliance with the rule. *Connecticut v. Dep't of the Interior*, 344 F. Supp.

3d 279, 294 (D.D.C. 2018) (quoting *Mdewakanton Sioux Indians v. Zinke*, 264 F. Supp. 3d 116, 123, n.12 (D.D.C. 2017)). Here, the administrative record is not necessary to determine whether federal law imposes a duty on the State Department to act further on visa applications that have already been refused under § 1201(g). Accordingly, the court will relieve the agency of the burden of producing it.

### IV. MOTION FOR LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a), a party who seeks to amend their complaint more than 21 days after service of a responsive pleading must obtain "the opposing party's written consent or the court's leave." Such leave "shall be freely given when justice so requires." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (cleaned up). But leave may be denied if there is good reason to deny, such as "undue delay . . . on the part of the movant" or if allowing the amendment would cause "undue prejudice to the opposing party." *Atchinson v. District of Columbia*, 73 F.3d 418, 425–26 (D.C. Cir. 1996) (cleaned up). A district court may also "deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss." *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012). Given the permissive standard for granting leave, "[i]t is the opposing party's burden to demonstrate why leave should not be granted." *Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 12 (D.D.C. 2017).

As an initial matter, the court will deny Plaintiffs' leave to amend with respect to their claims for unlawful withholding and unreasonable delay. As detailed above, those claims fail as a matter of law because Plaintiffs have failed to identify further action that the State Department is required to take on already-refused visa applications. *See supra* Part II. Plaintiffs concede that the "proposed amendments to the Complaint" merely repeat and "do not alter" their claims for unlawful withholding and unreasonable delay. Pls.' Mot. at 6. Indeed, they state that this "critical issue . . . remains unchanged." *Id.* Therefore, because it is well settled that "amendment of a

complaint is futile where the proposed amendment does not modify the substance of the complaint," *Payne v. District of Columbia*, 773 F. Supp. 2d 89, 95 (D.D.C. 2011), the court will deny Plaintiffs' leave to amend as to Counts One through Three of the proposed amended complaint.

It is a closer call whether Plaintiffs should be permitted to bring their proposed challenges to Presidential Proclamation 10949 and the No Visa Policy. Defendant first argues that those challenges would "be futile because Plaintiffs' proposed amended complaint does not allege that any individual Plaintiff's visa application has been re-adjudicated and refused under INA § 212(f) pursuant to the Proclamation" and therefore Plaintiffs lack standing. Def.'s Opp'n at 6–7. The court disagrees.

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Diamond Alt. Energy v. EPA*, 606 U.S. 100, 110 (2025) (quoting U.S. Const. Art. III § 2, cl. 1). "For a lawsuit to constitute a case . . . , the plaintiff must have standing to sue." *Id.* "[T]he irreducible constitutional minimum of standing contains three elements": injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Although it is true that Plaintiffs have not alleged actual injury—*i.e.*, they have not alleged that they already received refusals pursuant to Presidential Proclamation 10949—"the injury required for standing need not be actualized." *Davis v. FEC*, 554 U.S. 724, 734 (2008). In other words, a "plaintiff is not required to wait for an injury to occur in order to satisfy Article III standing requirements." *Jibril v. Mayorkas*, 20 F.4th 804, 817 (D.C. Cir. 2021); *Babbitt v. United Farm Workers*, 442 U.S. 289, 298 (1979) ("One does not have to await the consummation of threatened injury to obtain preventive relief." (cleaned up)). Rather, an "imminent threat of future injury" is sufficient to

establish standing. *Jibril*, 20 F.4th at 817; *see also Davis*, 554 U.S. at 734 ("A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct.").

The proposed amended complaint adequately alleges such a threat. Specifically, it asserts that the State Department is relying on Presidential Proclamation 10949 to refuse visas to individuals who fall within the Proclamation's scope. *See* Proposed Amended Compl. at 41, 45–47, 62–63. Plaintiffs are individuals covered by the Proclamation with visa applications that are in administrative processing. *Id.* at 3. It is therefore reasonable to infer that Plaintiffs face "a realistic and impending threat" of receiving visa refusals pursuant to the Proclamation, *Davis*, 554 U.S. at 734 (citing *Babbitt*, 442 U.S. at 298), especially because "at the pleading stage, the burden imposed on plaintiffs to establish standing is not onerous and general factual allegations of injury . . . may suffice." *N.B. ex rel Peacock v. District of Columbia*, 682 F.3d 77, 82 (D.C. Cir. 2012) (cleaned up). There is no question, moreover, that a refusal pursuant to the Proclamation would be caused by Defendant. And "[i]f a government action causes an injury, enjoining the action usually will redress the injury." *Doc Soc'y v. Rubio*, 141 F.4th 1273, 1277 (D.C. Cir. 2025) (quoting *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 n.1 (D.C. Cir. 2017)). Therefore, the court is satisfied that all three elements of standing are adequately alleged.

Defendant next argues that Plaintiffs' challenge to the Proclamation on nondelegation and excess-of-statutory-authority grounds would be futile. On this point, the court agrees. As another court in this District recently held, the claim that section 212(f) "is itself unconstitutional under the non-delegation doctrine" is "borderline frivolous." *Thein*, 2025 WL 2418402, at *14 n.14. To be sure, section 212(f) is a "comprehensive delegation" that "exudes deference to the President" and "vests the President with ample power to impose entry restrictions." *Trump v. Hawaii*, 585 U.S. 667, 684–85 (2018). But the Supreme Court has "found intelligible principles in a host of

statutes giving agencies significant discretion," including statutes authorizing agencies "to regulate in the 'public interest.'" *FCC v. Consumers' Rsch.*, 606 U.S. 656, 683–84 (2025) (quoting *NBC v. United States*, 319 U.S. 190, 225–26 (1943)); *see also Chamber of Comm. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996) ("[E]ven the basic doctrine of unconstitutional delegation, while by no means repudiated, remains only a shadowy limitation on congressional power."). And "in the national security and foreign policy realms, the nondelegation doctrine . . . has played an even more limited role." *Consumers' Rsch.*, 606 U.S. at 706 (Kavanaugh, J., concurring).

To survive a nondelegation challenge, a statute need only "provide[] an intelligible principle to guide an agency's exercise of discretion." *Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 402 (D.C. Cir. 2022). As several courts in this District have held, the "textual limits" on the President's power under section 212(f) amply supply an intelligible principle. *Gomez v. Trump*, 485 F. Supp. 3d 145, 187 (D.D.C. 2020) (cleaned up); *see also Thein*, 2025 WL 2418402, at *14 n.14. In particular, the statute requires that the President identify "a class of [noncitizens] whose entry is restricted," "make a finding" that their entry would be "detrimental to the interests of the United States," and "suspend" their entry only "for a fixed period of time or until resolution of a triggering condition." *Gomez*, 485 F. Supp. 3d at 187 (cleaned up). Although "standards such as 'detrimental to the interests of the United States' . . . convey an expansive grant of power," "they are no more capacious than the broad standards deemed sufficiently intelligible by the Supreme Court in all but two of its cases." *Id.*

Plaintiffs' argument that the Proclamation exceeds the President's authority under section 212(f) or is otherwise based on an insufficient justification would likewise be futile in light of the Supreme Court's decision *Trump v. Hawaii*. In Presidential Proclamation 10949, President Trump found that the entry of noncitizens from Iran would be detrimental to U.S. interests because of

"inadequacies" in Iran's "information-sharing and identity-management protocols and practices," which, the President determined, undermine "the effectiveness of the screening and vetting protocols and procedures of the United States." 90 Fed. Reg. at 24498–99. The Supreme Court deemed a virtually identical finding sufficient in *Trump v. Hawaii* and warned that a more "searching inquiry into the persuasiveness of the President's justifications" would be "inconsistent with the broad statutory text and the deference traditionally accorded the President in this sphere." 585 U.S. at 686. Accordingly, the court will deny Plaintiffs' motion as to Count Four of the proposed amended complaint.

The court will, however, grant Plaintiffs' leave to bring Counts Five and Six of the proposed amended complaint, which challenge the No Visa Policy. Although Defendant demonstrated the futility of Plaintiffs' direct challenges to Presidential Proclamation 10949, Defendant offers little explanation for why Plaintiffs' challenge to the No Visa Policy would fail. *See Gingold*, 300 F. Supp. at 12 (explaining that the burden is on the non-moving party to show that leave should be denied). Defendant fleetingly suggests that Plaintiffs have not identified a "particular agency action that causes [them] harm." Def.'s Opp'n at 10 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)). But Plaintiffs have alleged the existence of a "No Visa Policy" under which the State Department has directed consular officers to refuse visas to applicants covered by Presidential Proclamation 10949. *See* Proposed Amended Compl. at 41, 45–47, 62–63; *see also Thein*, 2025 WL 2418402, at *15 ("After the President promulgated Proclamation 10949, the Department of State issued guidance directing consular officers to refuse visa applications from applicants subject to the Proclamation."). To the extent Defendant will argue that this guidance does not constitute final, specific agency action, the court will need more developed briefing and an administrative record. *See Gomez v. Trump*, No. 20-cv-1926, 2025 WL

12919371, at *1 (D.D.C. Aug. 13, 2020) ("[T]he court cannot resolve" Defendant's argument "that Plaintiffs have identified no final agency action" "without an administrative record . . . containing all policies, guidance, directives, orders, cables, or communications by the United States Department of State that implement, carry out, or administer" the Proclamation.).  At this stage, Defendant has not carried its burden of demonstrating futility.  *See Gingold*, 300 F. Supp. at 12.

Moreover, although the court will not prejudge the merits of Plaintiffs' challenge to the No Visa Policy before it has briefing and a record, there is some reason to think that this challenge might succeed.  "Several other courts in this District have held that the Department of State cannot rely on proclamations issued pursuant to [section 212(f)] to deny visa applications" because the INA appears to distinguish between suspending entry and denying visas.  *Thein*, 2025 WL 2418402, at *15 (collecting cases).  Accordingly, the court cannot conclude that granting leave for Plaintiffs to challenge the No Visa Policy would be futile.

Defendant has likewise failed to establish that there is some other reason to deny leave to amend with respect to these claims.  Plaintiffs did not engage in any undue delay—they moved to amend their complaint the month after the President issued Presidential Proclamation 10949.  Nor can it be said that a challenge to a policy governing the issuance of visas to Iranian nationals "bears no more than a tangential relationship to the original" claims regarding visa applications submitted by Iranian nationals.  *Geter v. U.S. Gov't Publ'g Off.*, 268 F. Supp. 3d 34, 44 (D.D.C. 2017) (quoting *Miss. Ass'n of Coops. v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991)).  To the contrary, the "nature of the case" remains the same:  Plaintiffs want their visa applications approved.  *Id.*  Although the court will not require Defendant to relitigate the claims regarding unlawful withholding and unreasonable delay, nor fight off meritless challenges to Presidential

Proclamation 10949, Rule 15(a) "afford[s]" Plaintiffs "an opportunity to test" their claims regarding the No Visa Policy "on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## V. CONCLUSION

For the reasons explained above, the court will GRANT Defendant's Motion for Judgment on the Pleadings; GRANT Defendant's Motion for Relief; and GRANT in part and DENY in part Plaintiffs' Motion for Leave to Amend. A corresponding order will follow.

Date: December 17, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge